GUARDIANSHIP OF A MINOR (No. 2). May 6, 1981. Steven, born January 26, 1967, is the only child of the marriage of his mother (the mother) and her late husband (the father). The father died September 21, 1979. Steven has long had emotional and behavioral problems and has been under the care of a succession of psychiatrists, psychologists, and therapists. In 1979, his behavior became seriously uncontrollable. Both Steven's parents agreed, on the recommendation of the clinical psychologist treating him, in July, 1979, that he should be admitted to McLean Hospital. See G. L. c. 123, § 10, as amended through St. 1976, c. 356, § 4. Just before this was done, Steven's parents commenced divorce proceedings.

The mother, a few weeks after Steven's admission to McLean Hospital, changed her mind and made various attempts to get Steven released from the hospital. Various court proceedings grew out of these attempts, including the appointment of a temporary guardian, a petition by the father for appointment as guardian, and the appointment of counsel for Steven. On August 16, 1979, a hearing was held before the probate judge at which the mother and father were each represented by their respective counsel; Steven was represented by his present counsel. See *Superintendent of Belchertown State Sch.* v. *Saikewicz*, 373 Mass. 728, 755-756 (1977); G. L. c. 201, § 14, as amended by St. 1977, c. 567, § 3. Steven was not present at the hearings. His counsel represented that Steven did not choose to appear and the probate judge found that there were "extraordinary circumstances," adequately reflected in the judge's report of material facts, which made an appearance by Steven in person not desirable.

On August 17, 1979, the probate judge made a report of material facts, supplemented later by statements of testimony under Mass.R.A.P. 8(c), as appearing in 378 Mass. 933 (1979). In his report of material facts, the pro-

bate judge found that "Steven is incapable of taking care of himself by reason of mental illness" and "that it is in . . . [his] best interest . . . to appoint a temporary guardian who is authorized to cause his commitment." On substantial subsidiary findings, the judge concluded "beyond a reasonable doubt, that failure to commit Steven would create a reasonable likelihood of serious harm," see G. L. c. 123, § 1, as amended through St. 1978, c. 367, §§ 55, 71A (see later amendment by St. 1980, c. 571, § 1), "in that a substantial risk of harm to others exists, and that . . . [Steven] has placed others in reasonable fear of violent behavior and serious physical harm."

While appeals were pending from orders entered on August 17, 1979, the father died, and the mother unsuccessfully renewed her efforts to have Steven released by McLean Hospital. She filed a motion to dismiss the proceedings which was denied, and there were proceedings on her behalf in this court and in the Supreme Judicial Court in an unsuccessful effort to obtain interlocutory appellate relief.

On November 28, 1979, all the parties, in person or by counsel, were present in the Probate Court prepared for trial on various then pending petitions and motions. After extended conferences, it was agreed that permanent coguardians would be appointed, viz. the mother and an independent coguardian, Mrs. Margaret Travers, an attorney. A transition period was to be commenced promptly with the "goal . . . that . . . [Steven] would be released" by McLean Hospital to his mother. Steven was to visit his mother during each weekend. After Steven's release, outpatient therapy would continue. A "decree," purporting to be in accordance with the agreement, was entered in the Probate Court on November 28, 1979. A motion to alter and amend this judgment, filed on December 6, 1979, was denied. A subsequent (December 7, 1979) petition by the mother for guardianship of her minor son was dismissed.

At the arguments, under questioning by the panel of this court, counsel disclosed that the coguardianship had given rise to differences of opinion; that Steven, while spending weekends with his mother, had become involved in controversy with her; and that, since completion of the present record, Steven has been released from McLean Hospital, but is apparently not living with his mother. Instead, he has been attending a private school in southern New Hampshire, where, in the opinion of his counsel, some improvement in his condition is being achieved. It rapidly became clear that there was need for a prompt reexamination of Steven's present condition, his progress in a new environment, and his asserted failure to get on with his mother. It also seemed desirable to have an appraisal of whether she is or is not unfit to have custody of him at a time when his future mental stability may depend on wise, skilled treatment, free from abrasive confrontations. An order for such a reexamination after remand of this case appears in parts 5 and 6 of this opinion. Prior to remanding

the case for such a revaluation, however, we decide certain issues of law presented by the pending appeals.

1. There was no error in appointing Steven's present counsel to represent his interests. The attorney appointed has served as an assistant register of probate. She appears in her representation of Steven to have had regard for his immediate and long term interests. Authority (apart from any statute) is inherent in the Probate Court to appoint a guardian ad litem or attorney for an unrepresented litigant, particularly one a minor or possibly otherwise incompetent. We think that the probate judge was justified in making such an appointment. Investigation by, or at the direction of, the probate judge will determine whether the attorney so appointed has won the confidence of Steven and has given effective representation of his long range interests. See *Superintendent of Belchertown State Sch.* v. *Saikewicz*, 373 Mass. at 755-756. See also *Felton* v. *Felton*, 383 Mass. 232, 242 (1981).

2. We perceive no error in the appointment of a temporary guardian for Steven in the light of the facts found by the judge, including his findings that Steven is "incapable of taking care of himself," and that failure to commit him "would create a reasonable likelihood of serious harm." His conclusions were supported by the agreed statements of evidence. Steven obviously needed wise psychiatric treatment, and the probate judge was justified in making certain that Steven received it. See by analogy cases such as *Custody of a Minor*, 375 Mass. 733, 746-756 (1978); *Custody of a Minor (No. 3)*, 378 Mass. 732, 743-750 (1979). See also *Guardianship of Roe*, 383 Mass. 415, 419-428 (1981). Compare *Fazio* v. *Fazio*, 375 Mass. 394, 400-405 (1978, dealing with an adult, not a minor); *Doe* v. *Doe*, 377 Mass. 272, 273 (1979, a reasonably mature minor). Compare also *Custody of a Minor (No. 1)*, 377 Mass. 876, 880-885 (1979).

3. It was not error to deny the mother's motion to dismiss the proceedings filed immediately after Steven's father's death. A temporary guardian had been appointed before the father's death. The guardianship proceeding did not fail because of that death. Steven, the main party in interest, is still living. The probate judge could reasonably have arrived at the same conclusion he had reached on August 16, 1979, prior to the father's death.

4. In view of the disposition we now make, it is unnecessary to consider (compare *Trudel* v. *Trudel*, 8 Mass. App. Ct. 939 [1979]) whether there was any divergence by the probate judge in his order of November 28, 1978, from the agreements made by all parties at the hearing before the probate judge on that day. Full reconsideration of that order will be possible after remand.

5. As already indicated, we are of opinion that the record promptly should be brought up to date after further hearings, preferably before the same probate judge. It will be open to him to continue in effect the pres-

ent appointment of guardians or to revise his order of November 28, 1979, in such manner as may seem appropriate to him (a) to be in Steven's interests, and (b) to be consistent with full findings to be made by him after a prompt hearing. In connection with this new appraisal, he should consider (1) whether the mother is a suitable and fit person to have custody of Steven or to be his coguardian, giving due regard to the fact she is his parent and to the cases already cited bearing upon a parent's special position; (2) whether frictions detrimental to Steven's interest exist between the coguardians; (3) whether relations between Steven and his mother make desirable any changes in custodial arrangements; (4) whether Steven continues to require guardianship as a mentally ill person; (5) whether the educational program in which Steven is now engaged can be improved; and (6) whether any different course of action will tend to be for his best interest.

6. The case is remanded to the Probate Court for further proceedings consistent with this opinion. Steven's mother is to pay her own costs and expenses and the costs of this appeal. Any allowance to counsel for Steven from his estate is to be in the discretion of the Probate Court. The orders considered in parts 1, 2, and 3 of this opinion are affirmed.

*So ordered.*

*David E. Neitlich* for the mother.
*Carol Kimball McAuliffe* for the ward.